DONN PRODUCTS, INC. and American Metals Corp., Petitioners,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 77–1269.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 16, 1979.

Decided Jan. 17, 1980.

Thomas J. McDermott, Joseph S. Ruggie, Jr., Keith A. Ashmus, Daniel W. Hammer, Cleveland, Ohio, for petitioners.

Elliott Moore, Paul Speilberg, Deputy Associate Gen. Counsel, N.L.R.B., Joseph Oertel, Washington, D.C., Bernard Levine, Director, Region 8, N.L.R.B., Cleveland, Ohio, for respondent.

James F. Gill, Robinson, Silverman, Pearce, Aronsohn, Sand & Berman, Michael F. O'Toole, New York City, for intervenor.

Before WEICK, LIVELY and KEITH, Circuit Judges.

LIVELY, Circuit Judge.

Donn Products, Inc. and a subsidiary (collectively, the company) have petitioned for review of a decision and order of the National Labor Relations Board (the Board). In its decision and order, which is reported at 229 NLRB No. 9, the Board found that the company had violated sections 8(a)(1) and 8(a)(5) of the Labor Management Rela-

tions Act of 1947, as amended, (the Act), 29 U.S.C. § 151 *et seq.* The Board ordered the company to desist from enumerated unfair labor practices. It further ordered that an election which Local 450 of the United Furniture Workers of America, AFL–CIO (the union) had lost be set aside and that the company be required to bargain with the union, upon request, without the necessity for a rerun election.

The organizational campaign began in March 1975, the union claimed a majority on the basis of authorization cards as of July 9th and the election was held on September 10, 1975. The union filed exceptions to the conduct of the election and the Board issued an unfair labor practices complaint. A consolidated hearing was held before an administrative law judge in July and August 1976. In his decision filed October 18, 1976, the administrative law judge found that from the beginning of the campaign heavy barrages of propaganda were aimed at the employees of the company from both sides. The employees were importuned relentlessly with both written and spoken arguments in favor of, and in opposition to, unionization. Based upon a voluminous record the administrative law judge found that the company had violated section 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1),[1] by several of its activities which took place in the period immediately prior to the election. Acts found to be illegal promises of benefits were the unilateral grant of binding arbitration as the final stage of an established grievance procedure, the announcement of a "preferred loan" plan, the announcement of a new plant-wide bonus system, and the promise to look into a dental insurance program. Acts found to be coercive were a discussion by the company's president of the possibility of moving production from one of the plants in the bargaining unit to another plant and closing the former, interrogation of two employees about union activities by a management employee, and a threat to

---

1. Section 8(a)(1) makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of" their right to organize for purposes of collective bargaining.

discharge one of these employees and to prosecute the other for distributing union literature on company premises.

Contrary to the claim of the union, the administrative law judge found that the company never told the employees that if it were required to bargain with the union, it would refuse to do so in good faith. The administrative law judge referred to this claim as a "blunderbus [sic] assertion" based on the "totality of [the company's] conduct." Considering the union's claim that a fair election would be impossible because of the unfair labor practices of the company, the administrative law judge found that there were no "flagrant" or "egregious" violations of the Act and that the violations which did occur fell within the "minor category" described by the Supreme Court in *N.L.R.B. v. Gissell Packing Co.*, 395 U.S. 575, 615, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969). Concluding that the violations did not preclude the holding of a fair election at the time of his decision, the administrative law judge recommended entry of a cease and desist order, but held that an affirmative order to bargain was not warranted.

The decision of the Board affirmed the findings and decision of the administrative law judge except with respect to the issues of sham bargaining and remedy. The Board found that the administrative law judge failed to consider the transcript of a September 8, 1975 speech of the company's president, which had been admitted into evidence. After quoting selectively from ten short paragraphs of the speech, which covers 50 pages in the appendix, the Board concluded, "Thus, Respondent [the company] repeatedly stated that it intended to engage only in sham bargaining and force the employees into a position where they had to strike." Finding this "threat of sham bargaining" a section 8(a)(1) violation, the Board stated that it disagreed with the finding of the administrative law judge that the unfair labor practices "were not serious enough to prevent the holding of another election."

■ In its petition for review the company contends that the union never established that it had a majority within the bargaining unit. There were 288 eligible employees and the administrative law judge found that 156 had signed authorization cards. Though the company contends the evidence relied upon to authenticate a number of the cards was not sufficient, the record does not support its position. There could be no disagreement as to what the clear language of the cards authorized. Those who signed them indicated their choice of the union as their collective bargaining representative. There was no evidence which required a finding that employees were told the cards were just to secure an election or that any inducements were offered which violated the rule set forth in *N.L.R.B. v. Savair Manufacturing Co.*, 414 U.S. 270, 94 S.Ct. 495, 38 L.Ed.2d 495 (1973). The finding that the union represented a majority of the employees on or about July 9, 1975 is affirmed.

■ The company also contends that the Board erred in finding it guilty of any unfair labor practices. Though the evidence on which some of the findings were based is marginal, we conclude that each of the section 8(a)(1) violations found by the administrative law judge and affirmed by the Board is supported by substantial evidence. We conclude, however, that the finding of the Board, in disagreement with the administrative law judge, that the company threatened to engage in sham bargaining is not supported by substantial evidence when the entire record is considered.

It is the position of the General Counsel of the Board and of the union, which appeared as intervenor, that the record demonstrates conclusively that the administrative law judge did not consider the transcript of the company president's speech to the employees and their spouses on September 8, 1975. This deduction is based on the fact that the administrative law judge described the evidence of sham bargaining as "nebulous, vague, [and] indirect," and that he referred to witness testimony about the speech in his opinion. This argument over-

looks several significant portions of the opinion of the administrative law judge. In calling the evidence "nebulous, vague, indirect" the administrative law judge was clearly referring to union claims based on "the totality" of the record, not on the September 8th speech alone. Among the items included in this "totality," the administrative law judge specifically identified "the extended speeches to assembled employees and the unending writings handed to each of them." On the other hand, in dealing with the September 8th speech, he showed a familiarity with its content and used at least one verbatim quotation from it. It is clear that the administrative law judge considered the transcript of the speech. However, he also dealt with the employees' perception of the speech and referred to testimony from these sources. This was a relevant consideration since it was claimed that the speech was intended to interfere with the right of employees to organize by telling them in advance that there would be no good faith bargaining by the company. *N.L.R.B. v. Gissell Packing Co., supra*, 395 U.S. at 619, 89 S.Ct. 1918. It is interesting that several witnesses remembered that the speaker affirmed the company's duty to negotiate in good faith.

In its decision the Board quoted portions of the speech from which an intention not to bargain in good faith might be inferred, if those statements had stood alone. However, the decision did not quote or even mention statements which indicated that good faith bargaining would take place if the union won the upcoming election. In describing "what really happens at a bargaining table," the speaker said that the union would start high and the company would start low. He described the process of give and take by both parties and then said, "So we have to hit somewhere in the middle, so this is what you call negotiating time." After pointing out that "a lot of it is for show," the president stated, ". . . there's tactics involved at a bargaining table. 'I will give you this and you take this,' and back and forth back and forth." The Board decision emphasized the statements which indicate that the company intended to engage in hard bargaining and that an impasse might be reached, resulting in a strike. However, when the speech is considered in its entirety, we agree with the administrative law judge that it cannot be considered an advance threat not to bargain in good faith if the union should be certified.

The Supreme Court made it clear in *N.L.R.B. v. Gissell Packing Co., supra*, 395 U.S. at 602, 89 S.Ct. 1918, that an election remains the preferred method of determining the choice by employees of a collective bargaining representative. However, the Court recognized two categories of cases where an employer may be ordered to bargain with a union which has not won a representation election. *Gissell*, 395 U.S. at 613–15, 89 S.Ct. 1918. *See Automated Business Systems v. N.L.R.B.*, 497 F.2d 262, 267 (6th Cir. 1974). In the present case the administrative law judge found that the unfair labor practices committed by the company were neither "flagrant" nor "egregious," and were in fact "minor." Thus he concluded that the violations should be placed in the third *Gissell* category, which will not sustain a bargaining order. *Gissell, supra*, 395 U.S. at 615, 89 S.Ct. 1918.

The Board treated the unfair labor practices in the present case as properly falling in the second *Gissell* category. In this category, if the union demonstrates that it had a majority "at one point," the Board may issue a bargaining order in cases where the unfair labor practices are not "outrageous" or "pervasive," but which "nonetheless still have the tendency to undermine majority strength and impede the election processes." *Id.* at 614, 89 S.Ct. at 1940. In disagreeing with the conclusion of the administrative law judge on the seriousness of the company's violations, the Board stated, "In our view there is little or no likelihood that a second and fair election could be conducted in the face of the Respondent's far-reaching unfair labor practices. . . ." This conclusory statement was followed by this explanation:

Here, Respondent's unlawful conduct began early in the union campaign, continued through the election, and resulted

in the dissipation of the Union's majority status. Thus, Respondent interrogated and threatened to discharge Steyer, a member of the union organizing committee, and threatened to prosecute employee Wasik for distributing union literature in the plant. It granted benefits to employees by instituting an arbitration procedure during the campaign and by materially assisting employees to obtain personal bank loans. Finally, Respondent made repeated threats that it would engage in sham bargaining should the Union be selected, and threatened economic retaliation by closing the plant in the event the Union won the election.

■ We have determined that the finding with respect to sham bargaining was not supported by substantial evidence. Only two out of 288 employees who worked in three separate plants were interrogated or threatened with discipline or discharge. No one was discharged and there were no general threats to punish employees for union activities. Further, there were no section 8(a)(3) violations.[2] The effect of the unilateral institution of arbitration, the arrangement for assisting employees to obtain bank loans, and the promise of a plant-wide bonus system can be eliminated from a future election by a cease and desist order. What the Board characterized as a threat of economic retaliation by closing a plant if the union won the election would not be a factor in a future election. Even though the union lost the election of September 10, 1975, the company did close the plant and it offered all employees there transfers to other nearby plants. All the affected employees accepted the offer. The Board found that the decision to close the plant was based on economic factors and declined to order the company to reopen it.

There is nothing in the record to indicate that any of the violations are of a continuing nature. We recognize that a threat of economic retaliation by closing a plant is one of the most coercive actions which a company can take in seeking to influence an election. *Automated Business Systems*

v. *N.L.R.B.*, *supra*, 497 F.2d at 276 (Edwards, J., dissenting in part). Nevertheless, the plant has now been closed without harm to any employee, and it is difficult to understand how this could interfere with a fair rerun election. The Board made no findings or detailed analysis as to the residual impact or continuing effect, or the likelihood of recurrence, of any of the unfair labor practices. *Cf. First Lakewood Associates v. N.L.R.B.*, 582 F.2d 416, 423 (7th Cir. 1978); *Hedstrom Co. v. N.L.R.B.*, 558 F.2d 1137, 1152 (3d Cir. 1977). While we are required to respect the special expertise of the Board, particularly in the formulation of remedies, courts are not required to enforce bargaining orders based on conclusory statements unsupported by sufficient facts. *See N.L.R.B. v. East Side Shopper, Inc.*, 498 F.2d 1334 (6th Cir. 1974); *Automated Business Systems v. N.L.R.B.*, *supra*; *N.L.R.B. v. Essex Wire Corp.*, 496 F.2d 862 (6th Cir. 1973); *N.L.R.B. v. Jamaica Towing, Inc.*, 602 F.2d 1100 (2d Cir. 1979); *N.L.R.B. v. General Stencils, Inc.*, 438 F.2d 894 (2d Cir. 1971) and 472 F.2d 170 (2d Cir. 1972) (following remand to Board); *Hedstrom Co. v. N.L.R.B.*, *supra*; *First Lakewood Associates v. N.L.R.B.*, *supra*; *N.L.R.B. v. American Cable Systems, Inc.*, 427 F.2d 446 (5th Cir.), *cert. denied*, 400 U.S. 957, 91 S.Ct. 356, 27 L.Ed.2d 266 (1970).

Our study of the entire record convinces the court that this was not a proper case for a bargaining order. There was a hard-fought campaign, but the classic tactics of discharge and widespread discrimination against and harassment of union sympathizers were not present. Though we have sustained the finding that there was a threat of plant closing, the Board has determined that the actual closing which followed the union's loss of the election was for economic reasons. The unfair labor practices which occurred were of a kind whose effect would quickly dissipate.

If the record merely caused doubt as to the Board's reasons for ordering bargaining we would remand for further explication of its reasons. *See Automated Business Sys-*

---

**2.** Section 8(a)(3) makes it an unfair labor practice for an employer to encourage or discourage membership in a labor union by discrimina-

tion in hire, tenure or any term or condition of employment.

*tems v. N.L.R.B., supra; N.L.R.B. v. General Stencils, Inc., supra,* 438 F.2d 894; *Hedstrom Co. v. N.L.R.B., supra.* However, though the Board gave little explanation for its decision in the present case, it is clear that the decision was determined to a large extent by the finding that there had been a threat of sham bargaining. With this violation eliminated we agree with the administrative law judge that a bargaining order was not justified. It has now been more than four years since the election was held. We believe the purposes of the Act will be best served by an early rerun election.

The findings of section 8(a)(1) violations by the Board, with the exception of the finding of a threat of sham bargaining, are affirmed. The finding by the Board of a section 8(a)(5) violation is reversed. The order of the Board is enforced with the exception of paragraphs 1(a), 1(d), 2(a) and 2(b). Enforcement of these excepted provisions of the order is denied. The notice to employees which the Board ordered posted will be modified to reflect the partial denial of enforcement. This will require deletion of all references to bargaining with the union and removal of literary paragraphs 1, 4, 12, 14 and 15 from the notice.

No costs allowed.